Clerk, please call the next case. 113-0251, Denise Hughes v. Chicago Campus Workers' Comp'n Counsel, you may proceed. Good morning, may it please the Court. My name is Brett Manchell, and I represent the Plaintiff Appellant, Denise Hughes, in this matter. Good morning, Counsel. Your Honors, this is a manifest weight case, and the facts matter, and the strong deference that we give to the Commission matters. We will ask this Court to look at the Commission's initial decision, which adopted the findings of the arbitrator, and found in favor of the Plaintiff Appellant. How do we do that when we don't have the record? In the record that you are provided with, there is one key piece of information, and that is the Treating Orthopedic Surgeons letter of October 8, 2010, where in that letter, which the Commission had and the arbitrator had, serves as the basis for their opinion on determining the credibility of the doctor and the treatment and the petitioner's injury, and linking it back to the February 2010 incident. And I think that letter itself is something that the Court can hang its hat on in terms of determining whether the Commission acted appropriately, and we think that it did. Now, in a case where the record is incomplete, taking into account three cases, all of which were also cited by the Respondent, and that's the inner-city products case, the F&B manufacturing case, and the Ferris from the Fourth District, between inner-city products and F&B, it's clear that this Court reviews, in the case of a Commission decision that was appealed to the Circuit Court, remanded back to the Commission, and appealed again to the Circuit Court and affirmed, in that situation, it is, of course, the Commission's first initial decision. We review the original decision of the Commission, not the Circuit Court's decision. Yes. But let me ask you this. Were there some things in this case that the Circuit Court ruled on and remanded to the Commission that were never raised at the Commission level? Did that happen here? I'm sorry? Did that happen here? I'm not sure exactly if that happened. But, yes, that did happen. The Court seemed to inject a question about a subsequent compensable injury that occurred on or about July 22nd. There was no injury. There was no notice to the employer. Is that proper? Is it proper for the Circuit Court to do that? I don't think so. Just like I don't think it is proper for the Circuit Court to very literally inject its own opinion on the credibility of the witness, the Circuit Court literally says that Dr. Nam, again, the treating physician, his opinion loses some of its credibility when it's made after anything can be changed. The Court guesses that it would not look good for Dr. Nam if he were to state after surgery that the reasons for surgery stem from the non-work accident. These are on page 22 of the record that's provided to you. So in light of the fact that you're acknowledging that the Circuit Court erred in the procedure of dealing with issues and ruling on issues that were never properly raised before the Commission, what are you asking us to do in light of that? In light of that, I am asking you to affirm the initial decision of the Commission, which the Commission adopted the findings of the arbitrator and found in favor of the plaintiff, Capelli. And in doing so, and in this I believe court gets the instructions from the inner city case where with the remand and then the other Circuit Court orders, what we would ask is that, again, the Commission's decision be affirmed. The Circuit Court order remanding the decision to the Commission should be reversed and the Commission's decision on remand and the Circuit Court's opinion affirming that decision should be vacated. How would we affirm the original decision without the record? Well, again, I believe that the October 8th letter is specific. Just with a single letter? And there is the Commission's decision and the arbitrator's decision, which specifically states what the basis are for their opinions. How can we say that the decision is not against the manifest way of the evidence when we don't have any of the evidence in the record? Let me ask a second question. I mean, this was raised in the athlete's brief. Why wouldn't you file a motion to supplement the record to give us a full record? To answer the second question first, that was an oversight. And we did not have, at that time, anything else to ask. An oversight, the athlete's brief said there is no complete record here. And turning to some of the cases that the athlete cites, Ferris, for example, dealt with an incomplete record on appeal. But reading that case together with the rule that it is the Commission's original decision that is under review here, the Ferris court took the voucher rule, which says that the circuit court or the trial court, it's presumed that the trial court made its decisions based on, presumed that they were sufficiently based in facts. There are some cases where the trial court didn't say that. In that case, those cases were remanded. And the trial court would say, hey, point to the record where you make this decision. But importantly, the logic from the Ferris case indicates that this court should give deference to the Commission, which would be akin to a trial court, and presume that the Commission properly assessed the credibility and testimony that it had before it in finding the compensable injury and finding for the plaintiff appellee. I will also point out that it was the respondent who initially appealed this matter to the circuit court. And I don't, and this is the record that's before you, was the record that I believe the circuit court used as well in coming to its conclusion and usurping the Commission and putting in its own view on the, its own opinions on the credibility of the witnesses. Even in light of, again, that October 8th letter where Dr. Nam explicitly notes that the plaintiff's injury and aggravation and acceleration of pre-existing injury, which is itself a compensable injury, all stem, at least in part, from the February 2010 compensable injury that gave rise to this case. And the reasons that the Commission's decision is not against the manifest weight of the evidence, because the Commission indicated, by adopting the arbitrator's findings, that there was support in the testimony and in the records and in the opinion of Dr. Nam. Specifically in those decisions, it was noted that at least there were eight visits between Dr. Nam and the petitioner. Dr. Nam ordered an additional MRI. Now, although Dr. Nam did not review an MRI that was taken in 2009, he did review it after he performed the surgery on the propellant. And it was before the arbitrator and the Commission. And in that letter, Dr. Nam said, I reviewed these things, this MRI report, and my opinion is essentially the same, that there are injuries in aggravation and acceleration. And it is certainly tied to the February compensable injury as well as the pre-existing injury. But that is sufficient for the Commission to render its opinion and sufficient for the injuries in the treatment. That came from the injury that arose on February 13th of 2010. In addition, Dr. Nam notes that the treatment was secondary to both dates, the 2009 incident and the 2010 incident. And he twice relates the injury to the February 13th bus driving incident. Furthermore, the cases cited by the respondent, which are used to suggest that the Commission acted against the manifest weight of the evidence here, are, I believe, distinguishable. For example, in the Chicago Messenger case, which is a First District case, the holding was essentially that the testimony was sustained in a ward. And there, the Court found that the Commission acted against the manifest weight of the evidence when the claimant gave testimony under oath, gave statements not under oath, and gave differing statements to coworkers and to doctors and to other witnesses. So there, the Commission found in its ruling that the statements that were not under oath were more credible than the statements made under oath. And I believe this Court said that the statements made under oath are the ones that are more credible. And thus, for that reason, the Commission acted against the manifest weight of the evidence. There's no overwhelming evidence here to challenge the credibility of Dr. Nam. The Commission and the arbitrator have, in the record, enough to make their decision, which is their sole authority to do, and they did that, I believe, correctly. In addition, the Gross case, which is out of the Fourth District, again, this Court found the Commission to act against the manifest weight of the evidence, but that is where the Commission virtually ignored the testimony of one of the experts. This is a case involving a claimant with COPD who was both a smoker for decades and a mine worker for decades, and the Commission held that the COPD was solely caused by the years of smoking and that there was no impact from the years of coal mining. That was against the manifest weight of the evidence because testifying doctor indicated that 30 years of smoking and 30 years of coal mining are both likely going to have an impact on one's developing COPD. And so, again, here we don't have that situation where the Commission is virtually ignoring one side or the other and facing their decision by ignoring a logical opinion. The Commission has the duty to weigh the facts, to weigh the evidence, and to weigh the credibility of those before, and the Commission absolutely did that here. And for that reason, this Court should affirm the original decision of the Commission in finding that the Circuit Court's decision remanding the case back to the Commission was improper and should be reversed, that the subsequent decision on remand from the Commission and the subsequent decision affirming the decision on remand in the Circuit Court, those should be vacated and the Commission's first decision should be reinstated and affirmed. Thank you. Thank you, Counsel. Counsel, you may respond. May it please the Court. Opposing Counsel, my name is Rachel Kaplan and I represent the CTC. The Commission's first decision was against the manifest weight and the Circuit Court properly remanded it. Because the Commission's decision on remand resolved the prior errors, that decision should be affirmed. Well, let's get back to basics before we get into that. Is it appropriate for a Circuit Court to deal and rule on issues that were never raised before the Commission? I don't believe that Opposing Counsel affirmatively stated that or identified what the Circuit Court did that was not ruled on by the Commission. The CTA's position is that the Circuit Court did not rule outside of what was presented to the Commission. But regardless, this Court primarily focuses on the Commission's decisions, not the Circuit Court's decision. And I would like to address this Court's communal concern about the lack of the record here. The CTA, as noted, did raise that issue in the reply brief, in its reply brief, or response brief, excuse me. The Petitioner had an opportunity to add to the record, to supplement the record with medical reports, with medical documents. He never did that. When the appellant provides a record that is incomplete and inadequate, all benefits of the doubt go to appellees. So on this basis alone, the Commission's second decision should be affirmed. There is not an adequate record here for this Court to make a decision, and Petitioner failed to supplement the record in a way that can make this Court's review meaningful. So on that basis alone, the Commission's decision on remand should be affirmed. But we can review the procedural aspects of what occurred in the Circuit Court following the First Commission decision. And can you explain to us what the Circuit Court did upon that first judicial review? The Circuit Court's original decision stated that the Commission's decision to have a remand and to have the CTA pay for the October 1, 2010 surgery was against the manifest weight of the evidence. And it based that decision on the fact that it was not supported by facts, which is absolutely true. In this case, Dr. Nam stated that Petitioner's ankle condition in July 2010 was secondary to her February 2010 accident, but at the time Dr. Nam made that opinion, he was completely unaware that Petitioner had been diagnosed with the exact same condition, an osteochondrial lesion, four months in advance of her February 2010 accident. So her July 2010 condition could not have been caused by the February accident. So that was one of the main findings that the Circuit Court issued. Can you characterize that as one of the main findings? Well, the Circuit Court stated that the initial decision by the Commission did not, was not based on reasoning and was not based on fact. And that was ultimately its conclusion. And therefore, it remanded the original decision back to the Commission so the Commission could review the entire record, could fully contemplate both Dr. Nam's and Dr. Holmes' decisions. Dr. Nam's decision, according to the Circuit Court, was inadequate because it did not fully account for or take into account the inadequacies and the lack of support for Dr. Nam's opinion. Counsel, I'm referring to page 5 of the Circuit Court's initial decision following the Commission's first decision. And there are three issues presented. I'll let you get to that portion of the decision. Do you have that in front of you? I will in one second. Excuse me. Yes. So each of those three issues that the Circuit Court has laid out there is premised around the July 23, 2010 date. The first one, for instance, says whether Petitioner sustained a compensable injury that arose out of her employment after July 23, 2010 and through such time that the case was tried. The second one is as to TTD following July 23. The third one is as to medical expenses following after July 23. In the Commission, did you argue, did your client argue the July 23 date, the significance of the July 23 date? I think the issue that the Circuit Court was really addressing was causality between a July 23 and an ongoing injury, presumably from that alleged incident on July 22 or 23, and the preexisting injuries that Petitioner experienced either through her May 2009, unrelated to her work accident, which involved a motorcycle accident. Well, let me just be clear in my question. Did the Circuit Court raise as issues the three that I just identified here, issues that were raised by the Commission or raised before the Commission? The Commission addressed causality in its initial decision, yes. Well, it had to address causation, as it found before the claimant. Yes. In the Commission's original decision, it relied on Dr. Nam's causality opinion, which stated that Petitioner's July 22, excuse me, July 2010 injury was secondary to her February 2010 accident,  and Dr. Nam focused on the relatedness, according to Dr. Nam, of the February incident triggering or having some causality to the July incident. It's the CTA's position that the July 22nd or 23rd incident was not in any way related or aggravated to the February incident, but rather was triggered by a prior accident that occurred in May of the previous year. Well, going into the discussion portion of the Circuit Court's decision in the second paragraph, I'll read two sentences. Circuit Court says this two-day gap seems to imply that the Commission found the existence of another compensable accident at some point. However, nothing in the Commission's decision states the existence of a second accident. I'll read the third sentence here then. The Commission did not frame it that way. The Commission really framed it as on or around July 22nd or 23rd there was an incident which allowed for Petitioner to recover ongoing medical benefits. Wasn't it just simply a matter of the claimant going to work, attempting to work on that day, July 22nd, not being able to complete work, and that was the reason why TTD had stopped and then started up again on July 23rd? That was not specifically addressed by the Commission on remand. And the Commission found that the Petitioner did not file a new application for benefits and that she did not in fact suffer an additional injury on or about that date. So this is all about causality, and although the Commission, led by Dr. Nams, believed that the February 2010 work accident really caused her ongoing injuries from July 22nd onward, Dr. Holmes, much more reliably and with foundation support to his opinion, determined that the underlying causality related to the original ankle fracture from the non-work motorcycle accident in May 2009. Did the Circuit Court address that? Did the Circuit Court address the May 2009 accident? Did he weigh the opinions? Did the Circuit Court judge attempt to weigh the opinions, conflicting medical opinions? The Circuit Court talked about all the evidence, and the Circuit Court stated that Dr. Nams' opinion was unsupported, and therefore it was not an opinion upon which the Circuit Court or in fact the Commission should be relying. And how do you get around the argument that the Circuit Court improperly substituted his judgment on a medical question that's reserved to the Commission? The Circuit Court did not improperly substitute his judgment. Instead, it stated, as in the Gross case, that Dr. Nams' medical opinion was unsupported by facts, and therefore it was not entitled, it should not have been considered by the Commission. And the Commission agreed, in fact, with the Circuit Court. When on remand, it looked at the entire credible record and looked more thoroughly, not only at Dr. Nams' decision, which was based on incorrect information and causality opinions, but also at Dr. Holmes' opinion. And Ms. Pena-Donson, we seem to be dancing around one issue. Did the Circuit Court address any issues at all that were not argued before the Commission? You seem to be saying no. Is that true? I think it's a matter of framing. The Circuit Court at root was addressing whether or not there was a compensable injury on or about July 22nd, and whether or not Petitioners should recover benefits from that point onward. And it remanded the case back to the Commission to consider those issues. Was the issue raised before the Commission as to whether the claimant was entitled to TTD benefits as a result of a separate compensable injury? Was that ever, you know, argued and addressed by the Commission? The Commission determined that there was not a separate and compensable injury stemming from the July 22nd or 23rd incident. Okay. So again, I'm sorry. This is unremanded, yes. Okay. On the initial Commission decision, though, did they address anything that specifically about the July 22nd return to work? I do not believe the Commission in its initial decision was as focused on that specific date. I think that in the original decision, the Commission was more focused on the Petitioner's overall injuries. Are you aware of the Manus case that holds that it's error for the trial court to remand a matter to the Commission that was never raised before the Commission at the appropriate time? You're aware of it. It's error to do that, period. But the Commission did not raise any new issues. The Commission was simply asking the – excuse me, the circuit court was simply asking the Commission to clarify whether or not Petitioner asserted a new injury on or about July 22nd. And the Commission on remand determined that she did not. The Commission did not specifically address a July 22nd injury, I believe, in its original decision. Nobody claimed there was a separate injury, did they? No, Petitioner never claimed there was a separate injury. No. No, he did not, Petitioner did not. It is a non-issue. Where did it come from? I mean, it's not a non-issue because the circuit court actually makes a lot of it. The circuit court did identify it as something that should be considered by the Commission. But again, the circuit court's decision is not the decisions that this court reviews. This court reviews the Commission's decision. But it is a procedural, if not hurdle, speed bump for us here. The CTA would assert that the Commission – the Commission was focused on whether or not a plaintiff was entitled to benefits after the February 2010 incident, regardless of whether or not it specifically identified the July 22nd incident or not. And the Commission decided that wrongfully, according to the CTA, that the Commission improperly awarded benefits because it was based on unsupported medical opinions. So it did not focus in on the July 22nd incident as much as whether or not plaintiff was entitled to ongoing benefits related to another accident that occurred in July. As mentioned, on remand, the Commission considered the entire record. And it determined that Dr. Naum's decision was not as reliable as Dr. Holmes' for a variety of reasons. Dr. Holmes' opinion had very strong foundational support. He examined the petitioner two times. He reviewed all of plaintiff's medical records and texts. And he determined that the data was overwhelming, that petitioner's condition was neither aggravated nor accelerated by her February 2010 accident. Well, which decision are we reviewing? The first one or the second one? The Commission's decision? Yeah, the original Commission's decision, correct? Yes. Okay. This is on remand. On remand, when the Commission reevaluated all the evidence and the credible record, it determined that Dr. Naum's opinion was not reliable, but, in fact, Dr. Holmes' opinion was reliable based on its foundation, based on his clear explanation about what medical issue petitioner was experiencing. Dr. Holmes stated that petitioner was experiencing a post-traumatic arthritis situation that was complicated by her height and weight, and it was due to the prior ankle surgery. And Dr. Holmes also stated, as Dr. Naum agreed, that in February, plaintiff simply had an ankle sprain, which was a minor incident that should have been resolved in a matter of weeks. Unlike the Commission's first decision, its decision on remand was based in fact and supported. And it is that decision that the CT asked that this Court affirm. Thank you, Counsel. Thank you. Counsel, you have five minutes on reply. Thank you. First, no additional material was provided to the Commission on their decision to make their remand decision. The only thing that changed was a change in their opinion, and they adopted what the circuit court essentially said they should adopt. The Court even notes that on page 101 of the record, where it indicates that on remand, the Commission properly follows the Court's order and found Naum incredible. The CTA states that Dr. Holmes, the IME doctor, was credible, that he examined the petitioner two times. But it's the job of the Commission to determine that credibility, and the Commission found Dr. Naum credible. Dr. Naum examined the petitioner at least eight times, and he's the one who physically performed the surgery and solved her injury. He also reviewed all her records. The issue regarding Dr. Naum not knowing enough to issue an opinion is completely resolved when Dr. Naum reviews the MRI that he had not reviewed and comes to the opinion that the injury sustained was aggravated and accelerated by the February incident. The issue of July 22nd is in red here. It is in the mag deal put in there by the circuit court. It was never considered to be an independent, compensable injury. It was simply, after her IME, the plaintiff attempted to go back to work, and she couldn't. She tried to use her foot to press the brake, and she couldn't. I submit that it is important that the IME doctor said that the petitioner has reached maximum medical improvement a month before this incident. But it's not a new injury. In fact, even as this court suggested, why did the circuit court choose that date if the CTA is saying that there was no other injury, and there wasn't? Ultimately, though, or the last point about the record on appeal, again, I believe that the commission's decision should be given the great deference that it is entitled to. So we ought to just affirm the commission on a manifest way of the evidence standard, even though we haven't seen any of the evidence? I believe the case law indicates that it presumes the commission acted on sufficient facts. I think that's exactly what you're saying. Even though we don't have the record on appeal, you haven't provided us with the evidence that was presented based on the manifest way standard. We should just rubber stamp what the commission did. No, I certainly don't think you should rubber stamp. How can we determine whether we should give their decision deference if we don't have any of the evidence they rely on? Based on my understanding of those cases. Counsel, if your theory was correct, every person who was appealing from a decision on remand would not furnish us with a record so that they can stand up in front of us and say, you must assume that the commission was correct in its first decision in the absence of an adequate record. It was your obligation to give us the adequate record. If you didn't, the X has got to fall on you. You can't stand up there and say we have to assume it was correct. And I realize that almost everything that you told us previously about why the commission's decision was not against the manifest way to the evidence was in fact based on things outside the record before us. The only thing that we have in the record before us are the two decisions of the commission. But the findings of fact or the factual recitation, that's not evidence before this court. The only evidence is the single letter by Dr. Knapp. That's it. And I understand that, and I believe that that letter clears up any issue regarding the commission's decision and that the decision is not against the manifest way to the evidence. The opposite conclusion is not clearly apparent based on what the commission heard from Dr. Knapp and the petitioner. And in any event, the decision on remand from the commission should be vacated. And the circuit court's decision remanding this case to the commission must be reversed simply because of the overstepping that it does in taking the role of the commission, the review of credibility out of the hands of the commission. Your time is up, counsel. Thank you. Thank you, counsel, both for your arguments in this matter. We'll take them under advisement. The written disposition shall issue. Madam Clerk, please call the last case of the morning.